UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN D. HAMLET, </br></br>  Plaintiff, </br></br>  v. </br></br> MARK J. BOWEN, Sheriff, CAPTAIN J. SLODERBECK, LT, CAREY, SGT. STEVENS, SGT. STUBBLEFIELD, SGT. LACEY, LT. UHRICK, OFC. LAND, OFC, FRANKLIN, OFC, SANTIAGO, OFC RIPBERGER OFC. SIMMONS, OFC. ABNEY, and OFC. CALHOUN, </br></br>  Defendants. | Case No. 1:12-cv-00700-TWP-DKL |

**ENTRY REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

For the reasons explained in this Entry, the Motion for Summary Judgment filed by Defendant's Sheriff Mark J. Bowen, Captain J. Sloderbeck, Lt. Carey, Sgt. Stubblefield, Sgt. Lacey, Lt. Uhrick, Officers Land, Franklin, Santiago, Simmons, Abney, and Calhoun (collectively, "Defendants") (Dkt. 30) is **GRANTED in part and DENIED in part.**

**I. BACKGROUND**

The Prisoner Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use

of the facility's grievance system requires a prisoner "to file complaints and appeals in the place, and at the time [as] the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *see also Woodfordo*, 548 U.S. at 90.

Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *See Dole,* 438 F.3d at 809. "Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* Thus, prison officials' failure to respond to a prisoner's grievance can render the administrative remedies unavailable, and thus exhausted. *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002) ("we refuse to interpret the PLRA so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.") (internal quotation omitted). Similarly, "when prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality." *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006).

## II. <u>CLAIMS</u>

Kevin Hamlet brings this civil rights action against the Sheriff of Hamilton County and others associated with the operation of the Hamilton County Jail ("Jail"). Hamlet alleges that his federally secured rights were violated in various ways while he was an inmate at the Jail. He seeks compensatory and punitive damages. Defendants seek resolution of Hamlet's claims through the entry of summary judgment. Hamlet has opposed that motion and asserts six claims in his complaint, these being:

(1) he was subjected to an assault;
(2) he was subjected to an illegal strip search;

    (3)   he was subjected to an illegal urine screen;
    (4)   he was subject to discrimination based upon his minority status;
    (5)   he was subjected to retaliation for writing a statement in support of another inmate; and
    (6)   he was defamed.

The Defendants' motion for summary judgment is based on their argument that Hamlet failed to comply with the exhaustion of administrative remedies requirement of the PLRA. That motion was granted as to the claims of illegal strip search and defamation. Therefore, the portions of the Motion for Summary Judgment requiring resolution at this point are the remaining four claims.

### III. SUMMARY JUDGMENT STANDARD

A court is to enter summary judgment when sought if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's facts being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e). On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The substantive law applicable to the motion for summary judgment is the PLRA's exhaustion requirement already described.

## IV. DISCUSSION AND ANALYSIS

### A. The Jail's Grievance Procedures

Insofar as relevant here, Hamlet was confined in the Jail from October 5, 2011 to February 15, 2012, and during this time a Jail grievance procedure existed. Hamlet had the right to use that process with respect to his concerns at the Jail and the allegations he presents in this lawsuit refer to conditions or treatment which are within the scope of matters which can be grieved.

The Jail's grievance procedure is a written policy and can be found in the Jail Handbook. The Handbook sets forth the procedure that inmates must follow to exhaust the grievance process. Additionally, inmates have access to kiosks in their cell block which inform the inmate of the availability of the process and the steps for following the grievance process. The grievance procedure directs that grievances be submitted in writing, and forms were available to Hamlet for this purpose. *See Torongeau v. Carter*, 2006 WL 2989288, *1 (S.D.Ind. 2006).

The Jail's grievance procedure is documented by evidentiary material submitted in support of the Motion for Summary Judgment and is described in the Defendants' supporting memorandum in the following terms, excluding internal citations to the evidentiary record:

> At all times during Hamlet's incarceration, the grievance process began with the first step of the inmate attempting to resolve the complaint informally by contacting the appropriate staff member. This typically involved the inmate communicating with staff or through the filing of an inmate request form. The jail also provides inmates with ready access to inmate request forms. If the inmate was not satisfied with the response, he could file a formal written

grievance. A response to the written grievance was to be issued by the Jail Commander or his designee within seven to ten days of the grievance. Typically, the first level of response was handled by the Shift Lieutenant allowing for a quicker response. At times, the Jail Commander or Assistant Jail Commander responded to the first level grievance, if the Shift Lieutenant was unable to provide a response. The initial written grievance was assigned a number at the bottom of the grievance. Once it was given a response by jail administration, it was sent to the appropriate Lieutenant who scanned the grievance into the Jail's computer server and it became a part of the inmate's electronic jacket. The response was then returned to the offender when the form cart was taken to the cell. If the inmate was not satisfied with the response, he could file an appeal to the Jail Commander within five (5) days of the receipt of a response to the original grievance. The same process of collection, logging, and return as stated above applied for the appeals process. The process became final after a response was received from the Jail Commander or his designee. The person answering the appeal has the power to correct or affirm the response being appealed. If the Jail Commander responded to the initial written grievance, then the appeal generally would be reviewed by the Sheriff or Major. If a grievance had merit, jail staff could take corrective action in response to the grievance.

**B.     Hamlet's Grievances**

According to Jail records, Hamlet filed five grievances during his incarceration. These are noted below:

| Grievance | Filed Date | Subject | Response | Appeal |
|---|---|---|---|---|
| 2011-328 | November 22, 2011 | "incidents of discrimination by some staff" | Hamlet moved to a different cell | Not Appealed |
| 2011-356 | December 14, 2011 | being taken off of his religious diet | Religious diet reinstated | Not Appealed |
| 2012-070 and 2012-071 | February 14, 2012 | retaliation | responded to 2012-070 on February 14, 2012, and to 2012-071 on February 15, 2012 | Not Appealed |
| 2012-072 | February 14, 2011 | complained about being placed in a padded | Response on February 14, 2011 (same day) | Not appealed |

**C.     Exhaustion of Available Remedies**

5

The Defendants have established that Hamlet did not file an appeal in No. 2011-328 or in No. 2011-356. It does not follow from this failure, however, that Hamlet thereby failed to "properly exhaust" his administrative remedies with respect to those grievances. The Court harkens to the Defendants' descriptions of the appeal option within the Jail's grievance policy: (1) "If the inmate was not satisfied with the response, he could file a formal written grievance"; (2) "If the inmate was not satisfied with the response, he could file an appeal to the Jail Commander within five (5) days of the receipt of a response to the original grievance"; (3) "If the inmate was not satisfied with this response, he could submit written grievance for review and response typically from the Shift Lieutenant, allowing for a quick response"; and (4) "If the inmate is not satisfied by this response, he could pursue another level of review, typically by the Jail Commander, who was in a position to correct or affirm the decision below". There is neither law nor logic to support the Defendants' argument that an appeal is either available or compelled by the Jail's grievance procedure if the inmate *is* satisfied with the response at some level. Hamlet did not file an appeal in No. 2011-328 or in No. 2011-356 because he was satisfied with the Jail's response at some level. As to these claims, therefore, the Motion for Summary Judgment will be denied.

This leaves for resolution claims which the Defendants argue were never grieved by Hamlet or claims which were grieved but for which the full appeal options were not exercised.[1] Omitting the two claims which were dismissed because Hamlet's failure to exhaust was conceded, the Defendants argue that Hamlet did not file a grievance as to the urine screening or the retaliation claims from February 13, 2012. The Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record

---

1 Hamlet's opposition to the Motion for Summary Judgment includes arguments relating to the merits of his claims and documentation regarding subjects which have not been brought forward as claims in this case. Filings of this nature are not helpful and congest the record.

for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003). The PLRA requires that he has exhausted his claims, but the evidentiary record which can be considered shows that he did not do so. *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) ("The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion.") (internal quotation and citation omitted).

## V. CONCLUSION

The Motion for Summary Judgment (Dkt. 30) is **GRANTED in part and DENIED in part.** The Motion is **DENIED** insofar as it seeks resolution on the argued grounds of claims related to grievances which were resolved to Hamlet's satisfaction. These are his claims associated with grievance No. 2011-328 and with grievance No. 2011-356, and likewise relating to the claim of discrimination (from November 2011) and to the claim of having been wrongfully deprived of his religious diet. These claims shall proceed to trial or to some other disposition.

The Motion is **GRANTED** in all other respects, meaning as to the first, third, fourth and fifth claims specified in Part II of this Entry. These claims are dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice."); *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002) (explaining that "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating").

No partial final judgment shall issue at this time as to the claims dismissed in this Entry.

**SO ORDERED.**

Date: 09/30/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kevin D. Hamlet, #892772
Westville Correctional Facility
Inmate Mail/Parcels
5501 South 1100 West
Westville, Indiana 46391

Cory Christian Voight
COOTS HENKE & WHEELER, P.C.
cvoight@chwlaw.com

Darren J. Murphy
HOWARD & ASSOCIATES
dmurphy@ori.net

Matthew L. Hinkle
COOTS HENKE & WHEELER, P.C.
mhinkle@chwlaw.com